## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES LIBERATORE, | ) |
| Plaintiff, | ) |
| v. | ) |
| CVS NEW YORK, INC., | ) |
| Defendant. | ) |

FILED

SEP 5 2001

Civil Action No. 94-1422 (RWR)

### MEMORANDUM OPINION AND ORDER

Plaintiff James Liberatore sued CVS New York, Inc. ("CVS") alleging that it had wrongfully terminated him as a CVS store pharmacist because he had threatened to inform the Food and Drug Administration ("FDA") that his CVS store kept prescription drugs at improper temperatures in violation of certain controlled temperature requirements. After the trial in this case, the jury returned a verdict in plaintiff's favor for $1,312,426, consisting of $1.1 million for emotional distress damages and $212,426 for lost earnings.

Defendant CVS has moved for judgment as a matter of law, a new trial, or a remittitur to decrease the amount of plaintiff's emotional distress damage award. Because there was sufficient evidence, although just barely, for a reasonable jury to have found in plaintiff's favor, defendant's motion for judgment as a



matter of law, or for a new trial, will be denied.  However, because the jury's emotional distress damage award was excessive, defendant's motion for remittitur will be granted.

<u>BACKGROUND</u>

Plaintiff was employed by CVS in 1980 as a pharmacist and later served as pharmacy department manager at the Thomas Circle store in the District of Columbia until the time of his termination.[1]  From 1991 through February 1993, CVS underwent renovations at the Thomas Circle store.  During that time, Liberatore became increasingly concerned that the prescription medications in defendant's pharmacy were being stored in violation of controlled temperature requirements, possibly causing adulteration of the drugs.  Liberatore raised his concerns verbally on several occasions with Nita Sood, the store pharmacy supervisor, with Jon Roberts, the pharmacy regional manager, and with Larry Merlo, the Area Vice President for CVS.

According to Liberatore, during one discussion with Merlo on July 29, 1993, Liberatore told Merlo that he (Liberatore) might bring the temperature problem to the attention of a neighbor who was a ranking official at the FDA, if the issue were not

---

[1] CVS was known as "People's Drug Stores" until early 1994. For purposes of clarity, throughout this opinion defendant is referred to as "CVS."

- 3 -

resolved.  Merlo's demeanor changed.  His face turned white and
he walked out.

On July 29, 1993 -- the same day that Liberatore claimed he
made his whistleblowing threat -- Merlo, Roberts, and Carlos
Ortiz, the director of professional and government relations at
CVS, decided to conduct a drug reclamation, whereby the store's
drug stocks were returned to their respective manufacturers as
defective.  Although Liberatore normally would have directed such
a reclamation, in this instance, Roberts and Merlo ordered Sood
to direct the reclamation and not to tell Liberatore about it.
Ortiz testified during his deposition that the reclamation was
ordered to avoid a public relations concern.

In a separate incident, CVS initiated an investigation into
Sood's claim that drugs had been missing from Liberatore's
pharmacy for over a month.  According to CVS store protocol,
Ortiz was to be informed whenever such an investigation was
initiated, and Ortiz's records first reported this particular
investigation on the same day that Liberatore said he made the
whistleblowing threat.  In addition, CVS policy required audit
records to be kept whenever pharmacy products were alleged to
have been missing or stolen, but CVS produced no audit records.
Instead, Sood produced a written theft form only after Liberatore
allegedly made the whistleblowing threat.  On August 2, 1993,

- 4 -

CVS's Loss Prevention Department interviewed Liberatore as a
suspect in the missing drugs investigation.

Meanwhile, between March and June, Sood warned Liberatore
that he needed to get his expiring pharmacist's license renewed.
He did not do so.  After his license expired, he continued to
practice pharmacy in D.C. for five months knowing he was
unlicensed.  On August 4, he told Sood he would bring his renewed
license to work.  The next day, though, he admitted to Sood that
he had no current license and asked her to conceal that fact from
Roberts.

CVS fired Liberatore on August 6.  He later pled guilty to
knowingly practicing pharmacy in D.C. without a license.  He also
resigned from a part-time pharmacist's job he held in Maryland
where he had practiced for years without a valid license.
Thereafter, Liberatore worked intermittently in a succession of
lesser jobs in this area and in Arizona, lost his home, and
endured periods of separation from his family.  He was fired from
one pharmacist position in Arizona for practicing without a valid
license.  He was fired from two more positions and demoted in a
fourth for reasons including lying to conceal his conviction and
a prior termination.  Liberatore testified at trial that he had
also concealed his conviction and termination history from his
then-current employer.

- 5 -

Plaintiff argued to the jury that his treatment between July 29, 1993, when he made the whistleblowing threat, and August 4, 1993, before CVS management discovered his lapsed pharmacy license, shows that Merlo and Roberts were motivated by Liberatore's whistleblowing threat in their decision to terminate him.  CVS denied that Liberatore made the threat.  It contended that when management discovered that Liberatore had failed to renew his pharmacy license, Liberatore was terminated for knowingly practicing pharmacy without a renewed license and misrepresenting his status to CVS management.

## DISCUSSION

I.   Motion for Judgment as a Matter of Law or, in the
     Alternative, for a New Trial

CVS has filed a motion for judgment as a matter of law, or, in the alternative, for a new trial.  Pursuant to Fed. R. Civ. P. 50(b), this Court may direct entry of judgment as a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff.  When deciding a motion for judgment as a matter of law, a court "should review all of the evidence in the record."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).  "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations

or weigh the evidence." Id. "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151. The court "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (internal quotations omitted).

"Because granting judgment as a matter of law intrudes upon the rightful province of the jury, it is highly disfavored" and is "warranted only if no reasonable juror could reach the verdict rendered in th[e] case." Daskalea v. District of Columbia, 227 F.3d 433, 441 (D.C. Cir. 2000) (internal quotations and citations omitted). The jury verdict must remain unchanged unless the evidence and reasonable inferences are "'so one-sided that reasonable men and women could not disagree on the verdict.'" Curry v. District of Columbia, 195 F.3d 654, 659 (D.C. Cir. 1999) (quoting Smith v. Washington Sheraton Corp., 135 F.3d 779, 782 (D.C. Cir. 1998)), cert. denied, 530 U.S. 1215 (2000).

CVS argues that Liberatore failed to meet his burden of proving that he was fired solely because of the whistleblowing threat. CVS maintains that the jury could not have connected Liberatore's threat to Merlo with his termination, because there

was no evidence that Sood, Roberts or Ortiz knew of this threat when the decision was made to terminate him.  Therefore, CVS argues, the jury could not have reasonably concluded that this threat was the sole basis for his termination.  CVS bases this argument on the fact that, according to Merlo, Sood, Roberts and Ortiz, Merlo had nothing to do with the decision to fire Liberatore, and, according to Merlo, Roberts, and Ortiz, Merlo did not inform anyone else of Liberatore's threat.

As plaintiff has argued, resolution of these disputed factual issues depended upon the jurors' assessment of credibility.  The Supreme Court has made clear, and the parties do not dispute, that a court is not to determine whether the jury's assessment of witness credibility was correct.  See Reeves, 530 U.S. at 150.  Here, the jury could have determined that Ortiz was not credible, based on his inconsistent testimony as to whether he knew other pharmacists who were terminated for practicing without a license.  If they determined that Ortiz was not credible generally, the jurors could have disbelieved Ortiz when he testified that he did not know about Liberatore's whistleblowing threat.  The jury also could have concluded that Roberts and Sood lacked credibility when they denied actually knowing about Liberatore's threat, or when Sood was impeached with a prior omission about a key July 22 conversation with

- 8 -

Liberatore.  Likewise, the jurors were not bound to believe
Merlo's claim[2] that there was no threat and he told no other CVS
managers of any threat.  If the jury found that the testimony of
Merlo, Ortiz, Roberts, and Sood was not credible, it was squarely
within the jury's province to infer that Merlo had heard
Liberatore's whistleblowing threat and informed one or more of
the other managerial employees about it.  This would not amount
to improper speculation; it would be drawing a fair and
permissible inference from all the evidence before the jury.

     CVS argues that no reasonable jury could have found that
Liberatore's threat to report CVS's drug storage practices to the
FDA was the sole cause of his termination, because Liberatore
also had been practicing without his license and misrepresenting
this fact to Sood.  For Liberatore to prevail, he had to prove
that his "admitted lack of a license [and misrepresentation to
Sood] had nothing whatsoever to do with his termination."  See
Adams v. George W. Cochran & Co., Inc., 597 A.2d 28, 34 (D.C.
1991) (holding that the District of Columbia has adopted "a very
narrow exception to the at-will doctrine under which a discharged
at-will employee may sue his or her former employer for wrongful
discharge when the sole reason for the discharge is the

_____

     [2] Curiously, Merlo was not called as a trial witness.
Merlo's deposition testimony was admitted into evidence.

- 9 -

employee's refusal to violate the law"). CVS argues that it
presented uncontradicted evidence at trial that it had a written
policy to terminate any pharmacist that was found to be
practicing without a valid, renewed license, and that CVS
consistently applied this policy. CVS further asserts that it
presented testimony that former pharmacist employees were
terminated upon discovery that they did not hold a valid license.

The weight of this evidence, however, also is affected by
the jury's assessment of the witnesses' credibility. Ortiz, who
testified for defendant as to five of the terminated pharmacists,
also made conflicting statements regarding whether he had
personal knowledge about the firings of other pharmacist
employees besides plaintiff who did not hold a license. If the
jury chose to disregard Ortiz's testimony based on their
perception that he lacked credibility, it was the jury's
prerogative to do so. In addition, if the jury chose to assess
as tainted the testimony of other CVS managerial employees with
shared motives or interests, it was within their discretion to do
this as well.

In assessing the motive for Liberatore's termination, the
jury was also free to consider supposed irregularities in CVS's
behavior following Liberatore's whistleblowing threat. Not only
did CVS exclude Liberatore from a drug reclamation process he

- 10 -

ordinarily would have directed, CVS chose to conceal the
reclamation from him.  Moreover, CVS initiated a "missing drugs"
investigation at Liberatore's pharmacy in the absence of audit
records reflecting a shortage, even though CVS policy required
that such records be kept.  The jury could fairly have drawn
inferences against CVS from these circumstances.

CVS also maintains that since Liberatore told Sood that he
had renewed his pharmacy license, when in fact he had not, "it is
simply unrealistic to assume . . . that a supervisor who is lied
to about a critical job requirement . . . would not be motivated
. . . to fire the employee who lied to her."  See Defendant's
Reply, at 8.  CVS concludes that Liberatore's misrepresentation
must have had some role in the decision to terminate him, and if
this is the case, the verdict should have been returned for CVS.
That reasoning has great force, but CVS made this argument to the
jurors who apparently believed otherwise.  I will not interfere
with the jury's credibility determinations regarding the
witnesses on this issue, or the fair inferences the jury may have
drawn from the evidence presented in plaintiff's favor, thin as
it was.  Accordingly, defendant's motion for judgment as a matter
of law will be denied.

Defendant also argues that, in the alternative, I should
grant a new trial under Federal Rule of Civil Procedure 59.  A

- 11 -

new trial should be granted "only where the court is convinced the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" Nyman v. Federal Deposit Insurance Corp., 967 F. Supp. 1562, 1569 (D.D.C. 1997) (quoting Sedgwick v. Giant Food, Inc., 110 F.R.D. 175, 176 (D.D.C. 1986)).  In addition, "[m]otions for a new trial 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'"  Id. (quoting Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)).

As the foregoing analysis demonstrates, I have no reasonable basis for concluding that the jury's assessment of witness credibility and all the circumstances surrounding plaintiff's termination resulted in a verdict that was "seriously erroneous," or that allowing the jury's judgment and credibility determinations to stand will result in a "clear miscarriage of justice."  Defendant has failed to establish a manifest error of law or fact or to present newly discovered evidence that could warrant a new trial.  Accordingly, defendant's motion for a new trial also will be denied.

II.  Motion for Remittitur

CVS has moved for a remittitur to decrease the jury's emotional distress damages award of $1.1 million.  The D.C.

- 12 -

Circuit has established two alternative standards for determining whether a jury award for damages is excessive so as to warrant a remittitur.  The first is "whether the verdict is beyond all reason, or is so great as to shock the conscience." <u>Jeffries v. Potomac Dev. Corp.</u>, 822 F.2d 87, 95-96 (D.C. Cir. 1987) (quoting <u>Wingfield v. Peoples Drug Store</u>, 379 A.2d 685, 687 (D.C. 1977) (internal citation omitted)).  The second is "whether the verdict is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate."  <u>Id.</u> (internal citation omitted); <u>see also</u> <u>Curry</u>, 195 F.3d at 663.  The granting of a motion for remittitur is "'particularly within the discretion of the trial court[.]'" <u>Jeffries</u>, 822 F.2d at 95-96 (quoting <u>Doe v. Binker</u>, 492 A.2d 857, 863 (D.C. 1985)).  A court may remit a jury award, however, only if the reduction "'permit[s] recovery of the highest amount the jury tolerably could have awarded.'"  <u>Nyman</u>, 967 F. Supp. at 1571 (quoting <u>Carter v. District of Columbia</u>, 795 F. 2d 116, 135 n.13 (D.C. Cir. 1986)).  In addition, "[c]ourts may not set aside a jury verdict merely deemed generous; rather, the verdict must be so unreasonably high as to result in a miscarriage of justice." <u>Langevine v. District of Columbia</u>, 106 F.3d 1018, 1024 (D.C. Cir. 1997) (citing <u>Barry v. Edmunds</u>, 116 U.S. 550, 565 (1886)).

- 13 -

CVS argues that the jury award for these damages is "beyond
the reasonable range of awards that the jury could have
considered."  See Defendant's Memorandum, at 1.  Defendant adds
that there was insufficient evidence to justify a $1.1 million
emotional distress damages award because plaintiff provided only
his own testimony as evidence of his damages, and did not provide
any corroborating fact or expert testimony.  Defendant requests
that the Court remit the jury's emotional distress damages award
to $150,000 or, in the alternative, grant a new trial with
respect to the amount of the emotional distress damages award.

In support of its argument that the jury's emotional
distress damage award was excessive in relation to plaintiff's
harm, defendant relies on Nyman, an employment case in which
Judge Urbina of this court remitted a jury award of $350,000 in
compensatory damages to $175,000.  Nyman, 967 F. Supp. at 1572.
In reaching this conclusion, Judge Urbina exhaustively surveyed
discrimination and retaliation cases and found that the
reasonable range for intangible and non-economic damages "is
generally between $10,000 and $150,000."  Id. at 1571.  In
remitting the plaintiff's award, the court "relied foremost on
the evidence introduced at trial" by both parties, and considered
other jury awards, plaintiff's physical harm and medical
treatment evidence, while at the same time giving deference to

- 14 -

the jury's belief that the plaintiff's injuries warranted a large
award.  Id. at 1571-72.

Liberatore argues that CVS improperly relied on Nyman,
because Nyman involved a statutory award cap and, because the
instant case involves state law claims, "limitations imposed by
federal statutes must be ignored."  See Plaintiff's Opposition,
at 13.  However, the statutory cap was only one of the reasons
the district court decided to remit the jury award.  See Nyman,
967 F. Supp. at 1571-72.  Although there is no statutory cap
applicable to this case and although there have been subsequent
awards within and outside the range discussed by Judge Urbina in
Nyman,[3] Judge Urbina's set of factors to be considered in
analyzing a remittitur motion remains valid.

In this case, plaintiff offered his own testimony as proof
of his emotional distress damages.  Liberatore testified that, as
a result of making the whistleblowing threat, he became
uncomfortable and frightened that he was the prime suspect in
CVS's drug investigation.  Liberatore also testified that, after

---

[3] See, e.g., Chadwick v. District of Columbia, 56 F. Supp.
2d 69 (D.D.C. 1999) ($400,000 verdict in sexual harassment case
not excessive); Martini v. Federal National Mortgage Ass'n, 977
F. Supp. 464 (D.D.C. 1997) (jury verdict for emotional distress
on D.C. Human Rights Act retaliation claim remitted from $500,000
to $100,000), vacated on other grounds, 178 F.3d 1336 (D.C. Cir.
1999).

- 15 -

he was terminated from CVS, he worried about money, lost the
house he was living in as well as a new home he was planning to
purchase, had to relocate to Arizona without his family for a
period of time to find work as a pharmacist, and felt humiliated
in front of friends and family.  Liberatore conceded that he
liked his current job and that his family is "settled" and living
with him in a house in Arizona, but he also testified that he
still becomes nervous when called into his boss's office.

It is apparent from the amount of the emotional distress
damages awarded by the jury that they believed Liberatore
suffered a relatively high degree of emotional distress.
However, neither the quality nor the quantity of evidence
presented at trial supports a $1.1 million award for emotional
distress damages.  Plaintiff did not offer testimony from any
other witness to corroborate his factual testimony or support the
extent of his harm.  Plaintiff also did not testify that he
suffered any physical or psychological problems, and he did not
furnish any expert reports or testimony regarding his emotional
or psychological condition.  In fact, after his termination,
plaintiff received mental health assistance only because he was
required to do so as an employee who had practiced pharmacy
without a license.  Plaintiff testified that he did not benefit

- 16 -

from this assistance and could not even remember the name of the medical professional who provided the assistance.

Although Liberatore was not required to present witnesses to corroborate his own testimony about his emotional distress, in this case, Liberatore's testimony alone does not provide the substantial evidentiary basis needed to warrant an award of this amount.  See, e.g., Spence v. Board of Educ., 806 F.2d 1198, 1201 (3d Cir. 1986) (affirming the district court's remittitur, holding that "emotional distress damages may not be presumed," and that plaintiff's testimony in that employment retaliation case, by itself, was insufficient to support jury's $22,060 award for emotional distress damages).  Defendant has cited ample precedent, in addition to Nyman and cases Nyman cited, for its argument that $1.1 million is an excessive jury award for plaintiff's emotional distress damages.  See, e.g., Hetzel v. County of Prince William, 89 F.3d 169, 171-74 (4th Cir. 1996) (holding that plaintiff's $500,000 award for emotional distress in a Title VII employment discrimination and retaliation case, which was based "almost entirely on plaintiff's own self-serving testimony" and that of her co-workers, was excessive and remanding the award for remittal by the district court); Wulf v. City of Wichita, 883 F.2d 842, 874-75 (10th Cir. 1989) (holding that plaintiff's $250,000 award for emotional distress damages in

- 17 -

an employment retaliation case, based on plaintiff's own
testimony and that of his wife, was excessive and remanding for
the district court to remit the award to an amount not to exceed
$50,000); Spence, 806 F.2d at 1201 (holding that plaintiff's
$22,060 award for emotional distress damages in an employment
retaliation case was excessive and affirming the district court's
decision to remit the award); Neal v. Honeywell, Inc., 995
F. Supp. 889, 893-94 (N.D. Ill. 1998), aff'd, 191 F.3d 827 (7th
Cir. 1999) (holding that plaintiff's award of $550,000 for
emotional distress resulting from her whistleblowing activity,
which was based on plaintiff's own testimony and that of her
psychologist, was "monstrously excessive" and "simply off the
charts" and giving plaintiff a choice between a $200,000 remitted
award or a new trial on the damages issue only).

Moreover, although plaintiff testified that CVS's
retaliation caused him emotional distress, there was
uncontroverted evidence in the record of other factors in
plaintiff's life contributing to his distress.  For example, he
said he still becomes nervous when called into his boss's office.
That distress is to be expected since Liberatore chose to conceal
his criminal conviction and prior terminations from his boss.  In
addition, before CVS fired plaintiff, he had failed to obtain
renewed licenses in D.C. and Maryland, lied regarding the status

of his D.C. license, and attempted to get Sood to assist him in concealing his lack of a valid D.C. license from Roberts.  After he was fired by CVS, plaintiff was also fired by other pharmacies where he practiced without a valid license or lied on his employment application.  A professional who knowingly violates the law by practicing without a valid license and conceals from employers his checkered past will inevitably experience emotional distress as a consequence of his own misdeeds.

The record demonstrates that the jury's $1.1 million emotional distress damage award was excessive in relation to plaintiff's harm and the various causes of any emotional distress plaintiff may have suffered.  The jury's award was "beyond all reason" and "exceed[ed] the maximum limit of a reasonable range within which the jury may properly operate" under the D.C. Circuit's test set out in Jeffries v. Potomac Dev. Corp., 822 F.2d at 95-96.  Accordingly, defendant's motion for remittitur will be granted.  Plaintiff may either accept a reduced award for emotional distress damages in the amount of $200,000.00, which I find is the highest amount the jury tolerably could have awarded, or may elect to have a new trial on the issue of emotional distress damages.

- 19 -

<u>CONCLUSION</u>

CVS has failed to show that a reasonable jury could not have found in favor of Liberatore.  However, CVS has demonstrated that the jury's award for emotional distress damages far exceeded the reasonable range within which the jury could have operated. Therefore, it is hereby

ORDERED that defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative for a New Trial [106] be, and hereby is, **DENIED**.  It is further

ORDERED that defendant's Motion for Remittitur be, and hereby is, **GRANTED**.  Plaintiff is directed to advise the Court in writing within 21 days of the date this Order is signed, whether he accepts the remittitur amount of $200,000.00 for emotional distress damages in this case or whether he elects to proceed to a new trial on the single issue of the proper amount of emotional distress damages.

SIGNED this ___4th___ day of ___September___, 2001.

_____
RICHARD W. ROBERTS
United States District Judge